LALLANDE *vs.* M'MASTER.

APPEAL FROM THE COMMERCIAL COURT OF NEW-ORLEANS.

Uncurrent money left in the hands of a broker to sell at a discount, and taken by another broker, having dealings with and a creditor of the first, under pretence of selling it; he cannot appropriate it in payment of his debt, without the consent of the other; but the true owner and original depositor will recover its value in his hands.

This is an action to recover the sum of nine hundred and eighty dollars, as the value of nine hundred and ninety-five dollars in Illinois bank notes, which the defendant had received from the plaintiff's broker and appropriated to the payment of his own account against the broker, who had failed.

The plaintiff alleges that on the 19th February, 1840, he put into the hands of Robinson, a broker, two thousand and sixty-five dollars in Illinois bank notes to be exchanged or sold for Louisiana currency, at one and a half per cent. discount. That Robinson used one thousand and seventy dollars of this deposit, and having the next day after receiving it, left nine hundred and ninety-five dollars in his office with his clerk, with directions to sell it at 1 1-2 per cent. discount, the defendant, who is also a broker, in the habit of selling to and buying from Robinson uncurrent money, the latter being then indebted to him twelve hundred dollars on account, stepped in and asked the clerk at what rate he would sell this Illinois money. He answered he had forgotten the rate, and the defendant went away. Shortly afterwards he returned and asked the clerk to let him have the money; and if Robinson would not sell it at two and a half per cent. discount, he would return it, and the clerk assented. When Robinson came in and was informed of what had passed, he sent his clerk for the money, stating he was limited to one and a half per cent., and would not sell for two and a half per cent. discount. The defendant told the clerk that he had already disposed of the money.

All this passed on the morning of the 20th ; and the next day, Robinson failed. About 3 o'clock of the day, the defendant received the money, he directed his clerk to credit Robinson in his account current with the. net proceeds, after deducting two and a half per cent. The plaintiff alleges this money was his property, and prays judgment against the defendant, M'Master for the value of said notes.

The defendant pleaded the general issue, except such facts as are specially admitted. He avers that Robinson and himself were exchange brokers, and in the habit of purchasing from each other uncurrent money ; and that the money in question was received in the usual course of business in a payment of the balance of an account current between them, which Robinson expressly authorized him to take in this Illinois money on the same day he received it, and that he sold it the same day, in the usual course of business. He expressly denied that this money ever belonged to the plaintiff, and prays that his petition be dismissed, and reconvenes for three hundred dollars in damages. On the trial, Robinson was called as a witness, and stated that the defendant obtained the money from his clerk, and when he came in he sent his .clerk to the defendant for it the same day before three o'clock, who denied that he had it. The defendant's clerk testified that the money did not remain longer on hand than that day or the next. He thinks it was sold the same evening.

There was a verdict and judgment for the defendant. The plaintiff appealed.

*L. Janin*, for the plaintiff urged the reversal of the judgment.

1. Because there was no sale. The *defendant* obtained the money from the clerk with the express understanding that he was to return it, if Robinson did not accept his proposition. As soon as he was informed of it, Robinson disapproved of the transaction and sent for the money, and the defendant fraudulently denied having it in his possession. At no subsequent time was Robinson's consent obtained.

Least of all did Robinson consent to apply it to the payment of his own debt. Indeed by doing so, he would have exposed himself to the severe penalties of the act of 1840.

2. Even if the clerk had made a contract with the defendant, which cannot be pretended, it would be void, because a broker has no right to delegate his authority. *Story's Agency*, 30, 35.

3. The defendant did not get the notes in the ordinary course of business ; he obtained them *mala fide*, he had notice that Robinson was limited to selling them at one and a half per cent. discount, which implies that Robinson only acted as broker ; a presumption of this description would arise from the circumstance that Robinson was a professional broker, and this presumption, aided by the other facts in evidence, could leave no reasonable doubt in the defendant's mind, and finally, the usual course of trade is to sell uncurrent notes for cash and not on a credit.

Where money or notes are paid *bona fide* and upon a valuable consideration, they never can be brought back by the true owner. But when they come *mala fide* into a person's hands, they are in the nature of specific property, and if their identity can be traced and ascertained, the party has a right to recover. Per *Lord Mansfield*; *Cowper*, 200 ; *Paley's Agency, ch. 4, section 2, page* 260.

3. A sale upon credit, instead of being for ready money under a general authority to sell, and in a trade where the usage is to sell for ready money only, creates no contract between the owner and the buyer ; and the thing sold may be recovered in an action of trover. Per *Holt, chief justice*, 12 *mod.*, 514, *page* 262 ; *Paley's Agency, C. W. section 3, page,* 262.

4. Usage might authorize sales on credit, but without such usage the authority is limited to cash sales. An authority to sell stock does not authorize a sale on credit, as sales of stock are always for ready money. An authority to sell and transfer stock for the principal does not authorize the agent to transfer by way of security for his own debt, for it is not an ordinary exercise of such authority. *Story's Agency*, 74.

*Peyton* and *Smith,* for defendant.

1. The bank notes were purchased by defendant in good faith, for a valuable consideration, in the usual course of business, and without notice of the instructions of the plaintiff to Robinson. If these facts are proved, the title to the bank notes passed by delivery, and the plaintiff has recourse to Robinson only. Not even loss or robbery of the notes would, as in case of goods, entitle the plaintiff to sue the defendant for them. " For, says *Chitty's treaties on bills, page* 278, it may be laid down as a general principle that whenever one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must sustain it." And *Byles at page* 92, remarks, that " bills and notes payable to bearer circulate as money, and are considered as such. And it is absolutely essential to the currency of money that the property and possession should be inseparable." See also, *Chitty on Bills, page* 555.

2. The law of the case is free from doubt, and in questions of fact this Court will not disturb the verdict unless manifestly erroneous; nor where the cause depends on the credit due to a witness. *Morris vs. Hatch,* 2 *Martin N. S.,* 491. The jury had the witnesses, except one, before them ; they could best compare and reconcile the testimony adduced, and determine on the degree of confidence to which each witness was entitled.

The said defendant and appellee answers that there is no error in the judgment appealed from, and prays that the same be affirmed with costs.

*Morphy J.,* delivered the opinion of the court.

The record shows that on the 19th of February last, plaintiff placed in the hands of one Cary Robinson, an exchange broker of this city, two thousand and sixty-five dollars in bank notes of various banks of the state of Illinois, for the purpose of having said notes sold or exchanged for Louisiana currency, at a discount of one and a half per cent. That on the same day, Robinson having left in the hands of his clerk

nine hundred and ninety-five dollars of this money with directions to sell it at the above discount, the defendant who is also a broker and was in the habit of selling to and buying from Robinson uncurrent money, stepped into the office and proposed to buy this amount at two and a half per cent; the clerk not recollecting at what rate it was to be sold, said that he had better see Robinson; he consented, however, at defendant's request, to let him take away the money under the express understanding that if Robinson would not sell at that rate, he, defendant, would return him the money. As soon as Robinson came in and was informed of what had passed, he sent his clerk to defendant to get back the money, declaring that he would not sell it at that rate. The defendant answered that he had already disposed of the money, and would see about it; Robinson failed a day or two after. Under those facts the plaintiff claims the money taken by defendant as being yet his property, while defendant contends that he purchased it from Robinson in the usual course of business, and has carried to his credit the net proceeds of this money at two and a half per cent. in an account current annexed to his answer. The case was tried by a jury who brought in a verdict for defendant. The judge below overruled a motion for a new trial, declaring that he was satisfied that the verdict should have been for plaintiff, but that as the evidence was clear and uncontradicted, this court might render such judgment as the justice of the case required.

The only question to be solved is one of fact, to wit; whether there has been a sale of this Illinois money, which, according to the evidence belonged to the plaintiff. Defendant has attempted to prove a sale by the testimony of a single witness taken by commission before a justice of the peace: He states that on the 19th of February at 11 o'clock, A. M., Robinson in his presence agreed to sell this uncurrent money to defendant at a discount of two and a half per cent.; far from being supported by any corroborating circumstances, this testimony is directly contradicted by Robinson who denies having made any such agreement with defendant, either on the day alluded to or afterwards. When Robinson at about 3 o'clock

EASTERN DIST.
*December*, 1840.

LALLANDE
*vs.*
M‘MASTER.

[Uncurrent money left in the hands of a broker, to sell at a discount, and taken by another broker, having dealings with, and a creditor of the first, under pretence of selling it; he cannot appropriate it in payment of his debt, without the consent of the other; but the true owner and original depositor will recover its value in his hands.

on the same day sent to get the money back, defendant did not assert any right to it by purchase from Robinson, but answered only that he had already disposed of the money, and would see about it; notwithstanding this answer, it would appear that defendant still had the money in his possession at that hour, for his clerk testifies that it was put in a drawer and did not remain longer on hand than that day or the next. He thought it was sold the same evening, but could not swear that it was not in defendant's possession the next day, and that it was about three o'clock on the 19th that defendant directed him to credit Robinson on his account current with the net proceeds of this money at two and a half per cent. Upon the whole the evidence has appeared to us insufficient to establish the agreement which alone could authorize the defendant to apply this money to the payment of his own debt; admitting that he honestly believed that Robinson was selling it for his own account. *Louisiana Code, article* 2257.

It is, therefore, ordered, that the judgment of the court below be reversed; and this court proceeding to give such judgment as, in their opinion, should have been rendered below, it is ordered, and adjudged, that the plaintiff do recover of the defendant the value of said notes, at a discount of one and a half per cent, to wit: Nine hundred and eighty dollars and eight cents, with interest and costs in both courts.